Oct. 1831.

The Society, &c.
v.
Haight.

---

Joseph Conover and John S. Reid, surviving Executors of William P. Conover, dec'd, v. Richard Conover et al.

AND,

Joseph Conover and John S. Reid, surviving Executors of Theodorus Conover, dec'd, v. Richard Conover et al.

Where a party has occupied premises belonging to another, it follows, as a matter of course, that he is bound to pay for the use and occupation; unless he can show an agreement to the contrary, or a satisfactory reason why he should not be charged.

Where a plaintiff sues both at law and in equity for the same thing, he will, after answer filed, be put to his election in which court he will proceed; and if he elect to proceed at law, or neglect to make his election in proper time, his bill will be dismissed.

Where no steps have been taken in the suit at law, but testimony has been taken on both sides in this court relative to the same claim, and the suit has

CASES IN CHANCERY

Oct. 1831.

Executors of
Conovers
v.
Conover et al.

proceeded in this court without objection; the complainant will be considered as having made his election, and any farther proceedings at law will be stayed by injunction.

A claim for rent due the testator, not having been mentioned in the inventory, or the executors having settled their account in the orphan's court, and on the credit side prayed allowance for it, as not being collected; cannot conclude them as against the debtor: they may still recover, and in case of recovery they are liable, notwithstanding the account, to those beneficially interested.

The rule in courts of equity now is, that they will take notice of the statute of limitations, and apply it in the same manner as courts of law.

To take a case out of the statute, when there is no express promise to pay, but one is to be raised by implication of law, the acknowledgment of the party ought to contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of an intention or willingness to pay, or if the expressions be vague and equivocal, leading to no certain conclusion, the evidence ought not to be admitted.

When executors have settled their account in the orphan's court, if there be no evidence of fraud or mistake, this court will not disturb the settlement; but take the balance stated in the account to be the true balance in the hands of the executors.

The testator devised a farm charged with a sum of money for the benefit of his estate, and made the devisee one of his residuary legatees; there was also a demand for rent due from the devisee to the testator. The devisee had sold part of the land devised, and a judgment at law had been obtained against him. Upon a bill filed by the executors against the devisee and judgment creditor, to raise the sum charged on the land and the amount due for rent; the residuary share due the devisee is first to be deducted from the amount charged on the land, and the land held chargeable with the balance; that part of the land remaining unsold to be first liable, and the other part resorted to only to supply a deficiency; the judgment to be next satisfied, and then the demand for rent.

Where two bills were filed by the executors of two several testators, who were tenants in common of all their property, and devised it to the same persons; where the parties interested, and their rights, were the same under both wills; the two suits, on their hearing, may be consolidated, so that one investigation and report of the master, and one decree, may settle the whole.

Where the statute of limitations is insisted on by the answer, and there is no evidence of a promise, to take the case out of the statute, the master directed, in taking an account of rent due for use and occupation, to exclude all items over six years standing at the time of the commencement of the suit.

WILLIAM P. Conover and Theodorus Conover, of the county of Monmouth, were brothers, living together, and owning and

possessing all their property, real and personal, as tenants in common. William married and had children; Theodorus was never married. On the sixteenth day of October, 1815, each of them made a last will and testament. William gave his half of the property to his four children, in certain portions; and Theodorus gave his half to the same persons. The instruments were as nearly alike as they could be drawn, and were so intended to be. By these wills each testator devised to Richard Conover, one of the defendants, his moiety of the farm or plantation they had purchased of Barnes H. Smock; each charging the moiety devised with the sum of twelve hundred and fifty dollars, for the benefit of his estate, payable within two years after the decease of the survivor. Richard and the other children of William are residuary legatees under both wills. William P. Conover died in 1823, and Theodorus in 1825. In 1829 bills were filed by the executors in each case against Richard Conover and wife, to recover the amount so charged on the land; and James R. Conover, being a purchaser under Richard, and Job Throckmorton, being a judgment creditor, were made parties.

In the answer to these bills, Richard admits the charge upon the property devised to him, but insists, that as it appears by the settlement of the estate in the orphans's court, there is a large sum, viz. one thousand eight hundred and eighty-nine dollars and eighty cents due him as one of the residuary legatees under the will, which sum is now in the hands of the executors; he is entitled to have that sum deducted from the charge against him in the wills; and proffers himself ready to pay the balance, whatever it may be found to be on a fair account.

To this answer exceptions were taken on various grounds, but principally on the ground that the defendant claimed to have his distributive share deducted from the amount charged against his land; the complainants alleging that they had accounts or demands against him for rent, which should be set off against his distributive share; and that the defendant's claim could only be brought up by filing a cross-bill. The exceptions were overruled, and thereupon the complainants amended their bills, by inserting a claim for rent for a number of years prior to the death of the

testators, during which time Richard occupied the farm which was afterwards devised to him. To these amended bills the defendant has answered. He admits the possession, but denies that he was to pay any rent; and sets up the statute of limitation as a bar against any such claim. He also insists, that if rent is to be charged against him, he is entitled to compensation for services. Testimony has been taken on both sides. The cases were argued together, by

*Randolph* and *Southard*, for complainants;

*Ryall* and *Wall*, for the defendants.

Cases cited :—1 *Fonb. E.* 461 ; 3 *John. R.* 566 ; 8 *Com. D.* 108; 1 *Mad. C.* 79, 202; *Rev. L.* 787 ; *Mitf. P.* 200-1-4 ; 3 *P. Wms. R.* 90 ; 2 *Cox's C. R.* 118 ; 4 *Cranch's R.* 415 ; 6 *Ves. jr.* 586 ; 9 *Ves. jr.* 71 ; 10 *Ves. jr.* 93 ; *Coop. E.* 252 ; 3 *Atk. R.* 7 ; 2 *Ld. Raym.* 1204 ; 20 *John. R.* 576 ; 11 *Ves. jr.* 24.

THE CHANCELLOR. There is no doubt as to the charge on the lands. It is admitted on all hands, that the two thousand five hundred dollars is due, and must be satisfied.

The principal matter in dispute is the charge for rent.— When Richard first occupied the farm which was afterwards devised to him, he occupied it in connexion with his brother William, now deceased, and there is some evidence to show that they made some render, in kind, for the use of the property. After the death of William, which was in 1814, Richard enjoyed the property alone, without rendering rent to either of the testators ; and the question is, whether he is to be charged. He alleges that it was a mere gratuity and benevolence on the part of his father and uncle ; that he made no contract or agreement of any kind to pay rent, and that none was ever demanded in their life-time : that Joseph, the executor, occupied a part of the testators' property without paying rent, and also Samuel another part. On the other hand it is contended that the property occupied by Richard was much more valuable than that occupied by Joseph

or by Samuel; that the rent demanded (fifty pounds per annum) is far short of the actual value of the premises, and just enough to equalize among the brothers the favours of the testators in their life-time. That Richard is charged with the rent in the account book of William P. Conover; and that whether any contract be proved or not, he is bound on general principles to pay for the occupancy, unless he can show satisfactorily that he should be absolved from the payment.

On examining the evidence, I do not find any to warrant the conclusion, that there was an agreement, in express terms, to pay rent, or any acknowledgment on the part of Richard which can be considered as binding him to pay. Most of it rests upon hearsay or presumption, except that of Mrs. Alice Conover, which is altogether inadmissible on the ground of direct interest in her husband, who is one of the complainants and residuary legatees. An account book has been produced by the complainants, which is proved to have been the book of William P. Conover, one of the testators. In this book there is a charge, or memorandum purporting to be a charge against Richard, for rent, at one hundred and twenty-five dollars per year, commencing in 1815. It is continued in the hand-writing of William P. Conover, year after year, up to April, 1822. In 1823 William died, and the charge for the rent due in April, 1823, is made in the hand-writing of Joseph Conover, the executor. He is charged also, in the same book, by Joseph Conover, with a moiety of the rent for 1824 and 1825, up to the death of Theodorus Conover, which took place in 1825. I have not much confidence in this book. It is a very ancient one, and liable to many exceptions; and if this were a claim, the existence or validity of which was to depend altogether upon the book, I should incline to dismiss it at once. But it appears to me that the claim for rent rests upon much higher ground. The occupation of the premises is proved beyond doubt: that the property at the time belonged to the testators, is equally true; and it follows as a matter of course, that the party in possession is bound to pay for the use and occupation, unless he can show an agreement to the contrary, or some satisfactory reason why he should not be charged. The burthen of the proof rests upon the defendant, who would resist the

claim : and the question is, whether such proof has been made. He offers no direct evidence, but argues that the claim is unfounded, from the fact that no rent was ever exacted of him in the lifetime of the testators. That the other brothers, who occupied other separate portions of the real estate, paid no rent whatever. And that the testators, by their wills, had given to them severally the tracts which they had long occupied, saying nothing of any demand against them or any of them. There is weight in the argument, but it does not satisfy my mind as sufficient entirely to repel the claim. It may be true that no rent was exacted of him by the testators while living, and yet be equally true that they intended him to account for it after their death. And it may in like manner be true that the other brothers were not required to pay rent, and yet be perfectly just that Richard should pay a small annual compensation ; for the property he possessed is represented to have been much the most valuable ; and it may be that a strict regard to justice required that the testators should charge a small amount of rent to make him equal with the other brothers, who were also sharers of their bounty. The fact that this property was charged with the payment of a considerable sum of money, viz. two thousand five hundred dollars, and that Samuel's share was charged with only one hundred and twenty-five dollars, and that nothing was charged on Joseph's share, but that on the contrary some items of personal property were given to Joseph with the land, over and above his equal part of the residuum ; proves nothing in favour of the defendant. It appears to me the conclusion to be deduced from it is against him. For if the testators intended to leave them equal, and such appears to have been the intention ; and if that could only be done by imposing a charge of two thousand five hundred dollars on the share of Richard, it is evident that the same principle of equality would have caused them to charge him a rent for the enjoyment of his share while they were yet living, though the others paid nothing. Equal justice was thereby awarded to all. I incline, therefore, to the opinion, that something in the way of rent is to be charged against Richard ; and I think that as to the amount of it, the court should be governed by the amount charged in the book. It may not be the full value, but it certainly

is not more. And being the amount intended by the testators, the complainants can reasonably ask nothing more.

Some additional objections have been made to the claim for rent. One is, that this court can take no cognizance of it at this time, inasmuch as there is a suit for the same subject matter pending undetermined between the same parties, in the court of common pleas of the county of Monmouth. This is set up and insisted on in the answer, in lieu of the formal plea in bar. The practice is, where the party sues both at law and in equity for the same thing, he will be put to his election in which court he will proceed, but need not make his election until after the defendant has answered. If he elect to proceed at law, or neglect to make his election in proper time, his bill is to be dismissed: *Jones* v. *Earl of Strafford*, 3 *P. Wms.* 90; *note B. Anon.*, 1 *Ves. jr.* 91; *Mitf. P.* 91; *Rogers* v. *Vosburgh*, 4 *John. C. R.* 84; *Boyd* v. *Heingelman*, 1 *Ves. and B.* 381; *Beam. P. in E.* 150, 151. In this case there has been no order putting the party to his election, nor any application for such order so far as I am informed. The proceedings in this respect have not been altogether formal, but an election has been made in fact. No steps have been taken in the suit at law. Testimony has been taken on both sides in this court relative to the very claim for which the action was brought, and the suit has proceeded here without objection. I think it would be entirely too technical, under these circumstances, to say that the complainants should be turned out of this court and driven to pursue their remedy at law. They will be considered here as having made their election, and must abide the result. Any farther proceeding at law will be stayed by injunction.

It does not appear to me to be a sound objection against this claim for rent, that there is no mention made of it in the appraisement of Theodorus's estate. It may have been omitted because charged in the inventory of William's property; and if omitted for any other cause, it constitutes no bar to a claim properly established. As the whole claim was embraced in the first inventory, it was perhaps proper to make no mention of it in the second. Nor is it any better objection, that the accounts have been settled in the orphan's court, and that in the accounts the execu-

52

tors are not charged with this rent. On inspecting the accounts it appears, that in making the settlement the personal property of both decedents was brought together, and the whole put in one account. The executors charge themselves with the whole amount of both inventories, and on the credit side of the account pray allowance for the rent, as not being collected. I take this to be strictly correct. It certainly cannot conclude them as against the debtor ; it bars no right as against him. They may still recover, and in case of recovery they are liable, notwithstanding the account, to those who are beneficially interested in the sum recovered.

But it does not follow that, because rent is to be accounted for, that therefore the whole sum charged against the defendant for ten or fifteen years is to be allowed. The defendant has prayed, in his answer, to be admitted to the benefit of the statute of limitations, and I think with very great propriety. It is unnecessary to discuss the point, how far courts of equity are bound by the statute. The rule, as now received, is, that they will take notice of it, and apply it in the same manner as courts of law. Such has been the admitted doctrine of this court in former cases, and I see no cause to question its propriety or soundness. There is nothing in this demand that can exempt it from the operation of the statute. It is not a trust, but in the nature of a legal demand, which might have been prosecuted in the common law courts, and to which the statute of limitations might have been pleaded. It is said, however, that this case is taken out of the operation of the rule, by the admissions of the defendant in his answer, and by the evidence. The defendant, by his answer, admits the possession, but denies in the most unqualified terms the existence, either now or at any other time, of the debt charged against him. Neither in the answer or the testimony, is there any thing to show an admission of the debt on the part of the defendant. What promise or admission shall be sufficient to take a case out of the operation of the statute, has been long and much controverted in the courts. Different judges took different views of the question, and various devices were resorted to to evade the statute. One refinement was added to another, until the provisions of a wholesome law became almost a nullity. Of late years these

refinements have been approached for examination, and the glare of great names having passed away, it has been found, upon a closer inspection, that they are destitute of sound sense and practical utility to support them. The late decisions have corrected the errors that were afloat, and given the true construction of the statute, and in a way calculated to settle it. It would answer no useful purpose to go over the cases. In 1828 the question came up before the supreme court of the United States, in the case of *Bell* v. *Morrison,* from the district of Kentucky : 1 *Peters R.* 351. The opinion of the court was delivered by justice Story. After reviewing all the principal cases, he lays down the following rule :—" If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such an acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay ; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to the jury as evidence of a new promise to revive the cause of action. Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the danger of being entrapped in careless conversations, and betrayed by perjuries."— This is a safe and salutary rule, applicable as well to this court as the courts of law. Where the jurisdiction of the two courts is concurrent, the rule should be the same. There is no possible reason why the rights of parties in this respect should be changed by the change of *forum.* My opinion therefore is, that all such items of charge for rent as were of more than six years' standing at the time of the commencement of the suit in the common pleas for rent, must be considered as barred by the statute.

Against the sums properly payable by the defendant, he prays an allowance of one fourth part of the residue of the personal estate. To this he is undoubtedly entitled. And in taking the accounts, the balance in the hands of the executors, as it appears by their own accounts, is to be taken as the true balance. I do

not find any thing in the evidence, or in the accounts themselves, which will authorize this court to disturb the settlement, as made in the orphan's court; even if that could be done in this incidental way. I have discovered no evidence of fraud or mistake. That the account of the executors may be of doubtful character, and that Richard was sick and unable to attend when the settlement took place, and therefore had no opportunity of examining the account, furnishes no sufficient ground for this court to interfere. It must be taken for granted that the proper accounting officer did his duty, and was careful to see that all the items were properly vouched or proved. The balance in the hands of the executor of Robert Conover, if not embraced in the general account, is to be added to the general balance in the hands of the surviving executors of Theodorus and William.

Let it be referred to a master to take an account, 1. Of the amount of the charge on the land, with interest; 2. Of the amount of the rent due, on the principles above laid down; 3. Of the amount of the residuum due the defendant, Richard Conover; and, 4. Of the amount of the judgment due Job Throckmorton, one of the defendants.

In case the property has to be sold, the direction of the court is, that the residuary share due to Richard shall be deducted from the sum charged on the land, and that the land be held chargeable in the first place for the balance, after making such deduction; and that the part of the land which remains unsold be first liable, and the other part be resorted to only to supply a deficiency: that the amount of the Throckmorton judgment be next satisfied; and then the amount that may be due the complainants for rent, as ascertained by the master.

No formal application was made for the consolidation of these two suits, though the matter was considerably debated at the hearing; and perhaps it might not be proper to make any order to that effect at this time. But I would recommend it to both parties, as a measure that will save much cost and delay. There appears to me to be great difficulty in bringing them to a separate conclusion. The accounts of the executors, embracing both estates, will have to be unravelled, and separate statements made. The two inventories were not of the same amount; the

debts and expenses were not equal in both cases, and of course the residuum in each case will be different. Under the impression, and I think a correct one, that the parties interested were the same under both wills; that their rights were the same, and that no possible change of circumstances could vary them; all the proceedings have been, as it were, joint proceedings, up to the filing of the bills in these cases. The complainants were not only at liberty to proceed as they did by separate suits, but prudent and correct in doing so; yet it appears to me that great benefit will result by consolidating them at this time, so that one investigation and report of the master, and one decree, may settle both.